**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4430-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAMES A. FERREN,

    Defendant-Appellant.

_____

Submitted October 3, 2018 – Decided March 22, 2019

Before Judges Koblitz and Ostrer.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 16-11-3150.

Joseph E. Krakora, Public Defender, attorney for appellant (Lauren S. Michaels, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Frank Muroski, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant James A. Ferren appeals from the trial court's order denying his motion to suppress marijuana seized from his car pursuant to a warrant. Defendant contends police wrongfully detained him outside a friend's house in Sicklerville until they obtained a positive canine sniff of his vehicle. Police relied upon that and other evidence in obtaining the warrant.

The trial court held the police were authorized to detain defendant pursuant to a previously issued warrant to search the friend's house "and all persons present reasonably believed to be connected with said property and investigation." The court also held that police, based on information learned during the house search, developed a reasonable and articulable suspicion that defendant's car contained drugs. The trial judge held that the suspicion alone also justified defendant's detention.

After the trial court denied the motion to suppress, defendant pleaded guilty to third-degree possession of marijuana with intent to distribute in a school zone, N.J.S.A. 2C:35-7(a). The judge sentenced him to four years of probation, conditioned upon 270 days in jail.

On appeal, defendant contends his detention exceeded the scope of the house-and-persons warrant, citing Michigan v. Summers, 452 U.S. 692 (1981), and also lacked any alternative justification. We disagree. Police were

2

authorized to detain defendant while the house search was underway because he was a person "present reasonably believed to be connected with said property and investigation." Furthermore, police formed a reasonable and articulable suspicion that defendant's vehicle contained contraband, which justified his detention.

I.

Applying a deferential standard of review, we uphold the trial court's factual findings after the suppression hearing, as they were "supported by sufficient credible evidence in the record." State v. S.S., 229 N.J. 360, 381 (2017). The trial court found credible both defendant and Gloucester Township Police Detective Gregory Jackson, the sole witnesses at the suppression hearing. The judge attributed differences in their testimony to their divergent perspectives and the vagaries of recollection.

The judge recounted that before police obtained the warrant to search the Sicklerville house, they conducted surveillance and executed controlled buys of marijuana with a confidential informant's help. In his affidavit seeking the warrant, Jackson did not mention defendant, identifying only a man and woman who resided at the target residence and took part in the controlled buys. However, Jackson did not limit the requested search of persons to those two

3

individuals. He sought a warrant that authorized the search of "all persons present reasonably believed to be connected with said property and investigation for evidence," such as drugs and items "used in connection with" the drugs, including United States currency. The approved warrant authorized police to search the house "for the property specified," which included "U.S. currency," "and all persons present reasonably believed to be connected with said property and investigation."

A SWAT team of roughly twelve officers entered the house at 6:00 a.m. while Jackson, his team of investigators, a crime-scene unit, and a canine unit waited outside. Police found the two identified persons and five others, including defendant. Defendant testified that a female friend had invited him there the previous night, and he had slept over. Jackson testified that police found $1,000 on defendant's person.

Once the SWAT team secured the house and the persons inside, Jackson's team of investigators began searching the house. Meanwhile, police separated the occupants. Because the house was small, police escorted defendant and two others outside. Defendant was in handcuffs as he sat on a tree stump in the front yard. He was not permitted to leave.

In the house, police found drugs and paraphernalia for which other occupants claimed responsibility. Also, during the investigation inside the house, someone told Jackson that there were drugs in one or more of the cars parked outside. Two cars were parked in the driveway, while defendant's sedan was parked on the curb in front.

Jackson identified the owners of the vehicles. He secured the owners' consent to search the cars in the driveway. Police found marijuana in one of the vehicles. Defendant refused repeated requests for consent to search his vehicle. Roughly an hour after police entered the home, a drug-sniffing dog indicated that defendant's car contained drugs. At that point, police impounded the vehicle and released defendant. Although defendant believed that police had already completed searching the house by that time, the court credited Jackson's testimony that the search was still ongoing.

Jackson later secured a warrant to search defendant's vehicle, which led to the seizure of multiple packets of marijuana. Jackson's affidavit did not mention the seizure of $1,000 from defendant, or the statement from an occupant of the house that there were drugs in one or more vehicles. The judge nonetheless credited the detective's testimony, concluding that these facts were not essential in establishing probable cause to search defendant's vehicle.

A-4430-16T2

II.

On appeal, defendant presents the following points for our consideration:

POINT I

THE UNREASONABLE DETENTION OF DEFENDANT, WHICH INCLUDED QUESTIONING, HANDCUFFING, REPEATED REQUESTS TO SEARCH HIS CAR, AND A DOG SNIFF, WENT FAR BEYOND THE LIMITED FOURTH-AMENDMENT AUTHORITY GRANTED TO POLICE UNDER MICHIGAN V. SUMMERS. ALTERNATIVELY, THE DETENTION VIOLATED ARTICLE ONE, PARAGRAPH SEVEN OF OUR STATE CONSTITUTION.

A. Mr. Ferren's Car, Parked on the Street, Was Not Covered by the Warrant to Search [the Address], a Home in Which He Was Merely a Visitor.

B. Courts Have Applied the Summers Exception Narrowly and Have Declined to Expand It Beyond Its Underlying Purpose and Rationale.

C. Mr. Ferren's Detention Went Well Beyond What Michigan v. Summers Authorizes and It Was an Unlawful De Facto Arrest Without Probable Cause.

1. The Detention Was Not Authorized by Summers.

2. The Detention Was an Unconstitutional De Facto Arrest.

D. In the Alternative, Even If the Detention Complied with Summers and Its Progeny, It Violated Article One, Paragraph Seven of Our State Constitution.

6

## III.

We review de novo the trial court's application of its factual findings to the governing principles of law. State v. Jessup, 441 N.J. Super. 386, 389-90 (App. Div. 2015).

Defendant does not challenge the initial warrant to search the house and connected persons therein. Instead, he maintains that the initial warrant did not authorize his detention and the search of his vehicle. He further contends that had he not been detained, he would have left the scene in his vehicle before the police dog could indicate the presence of marijuana. Thus, he challenges the search of his car because the warrant to search it was secured with the fruits of the challenged detention.[1]

Defendant contends the detention exceeds that permitted by Summers. The issue presented in Summers was whether police were authorized to detain the defendant, a homeowner, who was already on his porch when police arrived

---

[1] Conceiving defendant's position as challenging the warranted search of his vehicle, the court assigned to defendant the burden to establish the warrant's infirmity. However, as defendant challenged the underlying detention upon which the warrant was based, the burden rested with defendant only if the State could demonstrate that the detention fell within the scope of the house-and-persons warrant. See State v. Atwood, 232 N.J. 433, 438 (2018) (holding that the State had the burden to justify a warrantless investigatory stop of a vehicle, notwithstanding that police searched the vehicle pursuant to a warrant they obtained based on the stop).

A-4430-16T2

to execute a warrant to search his house and seize heroin, but which did not identify any persons to be searched. 452 U.S. at 694; see also People v. Summers, 286 N.W.2d 226, 226 (Mich. 1979) (describing the warrant), rev'd, Summers, 452 U.S. 692. The United States Supreme Court premised its analysis on the fact that the warrant did not expressly cover the defendant. Summers, 452 U.S. at 694-95. The Court noted that since the defendant was already outside the house, it would not reach the question whether the warrant to search the house authorized the search of persons therein. Id. at 695.

The Supreme Court held that detention during the ongoing search of a home may be reasonable on several grounds, including: detaining occupants may "minimiz[e] the risk of harm to the officers" and prevent flight and destruction of evidence; occupants of a house to be searched presumably have an interest in remaining to protect their property; and detention would "add only minimally to the public stigma associated with the search itself." Id. at 701-03. Furthermore, where a warrant was issued based on a finding of probable cause of criminal activity in a home, "[t]he connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant." Id. at 703-04. Thus, the Court concluded, "[A] warrant to search for contraband

founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Id. at 705 (footnote omitted). The dissenters observed that, as a practical matter, such detentions could last for hours. Id. at 711 (Stewart, J., dissenting).

Defendant contends that Summers did not authorize his detention during the search because he neither owned nor resided permanently at the house. Therefore, he asserts, he had no obvious interest in protecting property in the house. Furthermore, the stigma of sitting handcuffed on the front lawn was significantly greater than the minimal stigma of being found in someone else's house upon the execution of a warrant. We are not persuaded.

The warrant in Summers authorized only a search of premises. The warrant here, in contrast, also authorized the search of persons "reasonably believed to be connected with said property and investigation." We have held that a warrant authorizing the search of "persons found therein reasonably believed to be connected to the property and investigation" to be "the equivalent of a warrant to search all persons found on the premises other than those whose presence is innocently explainable on its face, such as a uniformed postman or utility meter reader." State in Interest of L.Q., 236 N.J. Super. 464, 466, 470–71 (App. Div. 1989); see also State v. Carlino, 373 N.J. Super. 377, 395 (App.

Div. 2004) (finding that a warrant to search "all persons arriving at, departing from, and located" on the premises who are "reasonably believed to be associated with this investigation" encompassed anyone whose presence at the site was not apparently innocent). Defendant does not challenge the police's authority to search his person, which led to the seizure of the $1,000.[2]

Defendant was not a passing stranger. He stayed overnight in a house from which drugs were repeatedly sold. On that basis alone, police had a reasonable belief he was connected to the property and investigation. We recognize that some have interpreted Summers to apply only to residents of a home and not mere visitors. See, e.g., Baker v. Monroe Twp., 50 F.3d 1186, 1192 (3d Cir. 1995) (stating that "Summers itself only pertains to a resident of the house under warrant"); Wayne R. LaFave, 2 Search and Seizure § 4.9(e) nn.142-44, 146 (5th ed. 2012) (collecting cases on this point).

---

[2] The warrant did not simply authorize the search of "all persons found" at the premises. Compare State v. De Simone, 60 N.J. 319, 322 (1972) (upholding such warrants "if the individual is identified by physical nexus to the on-going criminal event itself" provided "there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant"), with State v. Sims, 75 N.J. 337, 348-51 (1978) (distinguishing De Simone and finding that search of all persons entering a gasoline service station pursuant to a warrant to search "any persons found therein" lacked probable cause).

A-4430-16T2

However, defendant was no mere visitor. Police established that he was connected to the investigation based on his possession of currency. See United States v. Bullock, 632 F.3d 1004, 1011 (7th Cir. 2011) (authorizing detention, during the search of an apartment, of the occupant's non-resident boyfriend where the boyfriend's activities were the subject of the investigation); Stanford v. State, 727 A.2d 938, 943 (Md. 1999) (collecting cases from jurisdictions that interpret Summers to "allow a detention if the police can point to reasonably articulable facts that associate the visitor with the residence or the criminal activity being investigated in the search warrant"); see also Cotton v. State, 872 A.2d 87, 92 (Md. 2005) (interpreting Summers to permit police, in executing a warrant to search an "open-air drug market," to detain everyone "except for persons who clearly are unconnected with any criminal activity and who clearly present no potential danger . . . until, acting with reasonable expedition, they know what they are confronting").

Although defendant may not have had an incentive to assist police in the search of a house he did not own or lease, he – like Summers – did have an incentive to flee before police found drugs attributed to him. Moreover, this case provides an added factor – defendant was himself subject to the search warrant as a "person connected with said property and investigation."

11

It is of no moment that other occupants of the house claimed responsibility for the drugs and paraphernalia found in the home.  Police searched defendant and seized $1,000.  Since the warrant expressly authorized the police to search for and seize U.S. currency as an item "used in connection with" suspected crimes, its discovery further bolstered their belief that defendant was linked to the investigation.  That connection gave the officers "an easily identifiable and certain basis for determining that suspicion of criminal activity justifie[d]" his detention.  Summers, 452 U.S. at 704.

Defendant contends that once the search of his person was complete, the police were obliged to let him leave.  We recognize that at that point, his detention could not be justified solely by the authority to search his person.  See State v. Watts, 223 N.J. 503, 515 (2015) (stating that "[a] warrant for the search of a person carries with it implicit authority to detain that person for a reasonable period to complete the objective of the search").  But, just as the police had a reasonable basis to detain the homeowner in Summers until they completed the search of the premises, the police had a reasonable basis to detain defendant,

who was reasonably connected to the premises and the investigation, until they completed the house search.[3]

Defendant complains that his detention was unjustifiably prolonged and constituted a de facto arrest, requiring a showing of probable cause. We disagree. We do not minimize the impact on a person of being detained in handcuffs for roughly an hour where he is visible to passersby. Yet, the length of defendant's detention was not unreasonable. The continuing house search and the succession of police discoveries – drugs in the house, $1,000 on defendant's person, the information that drugs were in one or more vehicles, and the confirmation of that information – justified defendant's continued detention. See State v. Chisum, ___ N.J. ___, ___ (2019) (slip op. at 19-20) (stating that the duration of an investigative stop must be reasonable, in light of the totality of the circumstances and the necessities of legitimate investigation). As the Summers dissenters noted, a house search may take hours to complete. See Search and Seizure § 4.9(e) (stating that for a detention during a warranted

---

[3] Defendant also misplaces reliance on Bailey v. United States, 568 U.S. 186, 199 (2013), wherein the United States Supreme Court limited Summers to detentions in "the immediate vicinity of the premises to be searched." First, defendant was searched in the immediate vicinity of the house to be searched. Second, the warrant covered defendant. See Watts, 223 N.J. at 519 (noting that Bailey did not involve a warrant to search a person).

search under Summers, "a somewhat greater period of time is permissible . . . than for the typical street-corner investigation," although the time presumably is shortened if the person is in handcuffs).

Nor did the use of handcuffs convert defendant's detention into an arrest. See Baker, 50 F.3d at 1193 ("There is no per se rule that pointing guns at people, or handcuffing them, constitutes an arrest."). "Inherent in Summers' authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention." Muehler v. Mena, 544 U.S. 93, 98-99 (2005). In Muehler, the police detained a civil rights plaintiff in handcuffs for two to three hours during a warranted search of a house for guns. Id. at 109. Acknowledging that the intrusion was greater than that in Summers, the Court nonetheless held that "[t]he officers' use of force in the form of handcuffs to effectuate Mena's detention in the garage . . . was reasonable because the governmental interests outweigh the marginal intrusion." Id. at 99.

Defendant's detention was also justified on the independent basis that police had formed a reasonable and articulable suspicion that his vehicle contained drugs. In determining whether police may conduct an investigatory stop of a vehicle and its owner, a court considers the totality of the circumstances. See State v. Gamble, 218 N.J. 412, 432 (2014) (stating that a

14

court must determine "whether the totality of the circumstances provided the officer with an articulable and particularized suspicion that the individual was involved in criminal activity, within the context of the officer's relative experience and knowledge").

In this case, police found defendant was an overnight guest in a suspected drug dealer's house in which drugs and paraphernalia were seized, and defendant was found to possess a large amount of currency. "The fact that purely innocent connotations can be ascribed" to these facts does not preclude a finding of reasonable suspicion. State v. Citarella, 154 N.J. 272, 279-80 (1998); see also State v. Nishina, 175 N.J. 502, 511 (2003) ("Facts that might seem innocent when viewed in isolation can sustain a finding of reasonable suspicion when considered in the aggregate . . . ."). In addition, police were informed once inside the house that one or more of the vehicles contained drugs. That information was soon corroborated by the consent search of one of the vehicles. Thus, police had a reasonable and articulable suspicion to detain defendant and his vehicle in order to conduct its investigation. See State v. Davis, 104 N.J. 490, 505 (1986) (noting that "[n]o mathematical formula exists for" determining reasonable suspicion to justify an investigatory stop).

A-4430-16T2

During that permissible detention, police conducted the canine sniff, which required no further justification. See State v. Dunbar, 229 N.J. 521, 538-40 (2017). On the basis of the canine sniff, police established probable cause to believe the vehicle contained contraband. They then impounded the car, obtained a warrant to search it, and ultimately seized the marijuana that gave rise to defendant's conviction.

In sum, we discern no violation of defendant's right to be free from unlawful searches and seizures. To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4430-16T2