**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5761-14T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANTONIO D. HALL,

    Defendant-Appellant.

_____

> Submitted March 14, 2017 — Decided July 6, 2017
>
> Before Judges Reisner and Rothstadt.
>
> On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 14-07-2030.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Marcia Blum, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Defendant Antonio D. Hall appeals from a judgment of conviction entered after he conditionally pled guilty to one count

of second-degree unlawful possession of a weapon (handgun), N.J.S.A. 2C:39-5(b).  Pursuant to his plea agreement, two other charges were dismissed, and he was sentenced to a five-year term of imprisonment, subject to a three-and-one-half year period of parole ineligibility, in accordance with the Graves Act, N.J.S.A. 2C:43-6(c).  On appeal, he challenges the denial of his motion to suppress the weapon — a handgun — arguing "the police had neither probable cause nor reasonable suspicion to conduct an investigatory stop."  We disagree and affirm.

The facts adduced at defendant's suppression hearing can be summarized as follows.  On March 21, 2014, at approximately 10:30 p.m., Camden County Police Officer Jordan Plitt,[1] his partner, Officer Joe Olivo, and five other officers were patrolling the South Camden area of Chesapeake and Hartford Streets, a residential, high-crime neighborhood.  They drove marked patrol vehicles and wore uniforms that clearly identified them as police officers.  From approximately fifteen feet away, Plitt observed defendant standing alone on a street corner, wearing a balaclava — a face mask that left only defendant's eyes unobscured — and a hooded sweatshirt with the hood pulled up.  Defendant's clothes

_____

[1]  Officer Plitt was the only witness testifying at the suppression hearing.

hung disproportionately to the left. When defendant spotted the patrol vehicles approaching, he placed his left hand in his pocket and began to "blade" the left side of his body away from officers.[2] Plitt's "training and experience" led him to suspect defendant was trying to conceal a weapon.

Plitt testified that defendant began to walk towards a house on the corner. The house was dark except for the porch light and was surrounded by a fence and front gate. Plitt parked and exited the patrol vehicle. When defendant reached the house, he began "frantically . . . bang[ing] with a closed fist on the front door." Plitt stood beyond the front gate and asked defendant if he lived at the house.[3] Defendant ignored his question and continued knocking on the door. Plitt asked defendant to come down and talk to him. With his hand still in his left pocket, defendant turned and walked towards the gate. Mere feet from Plitt, defendant "placed his right hand on the gate and hurdled it -- jumped right over it and began to flee."

Plitt and Olivo gave chase. The remaining officers began to get into their vehicles to provide back up. However, the foot

---

[2] The term blading describes an attempt to conceal a part of the body by turning it away from an observing officer.

[3] Officers later determined defendant did not live at the property.

chase lasted only half a block. As Plitt was "closing the distance about to tackle him," defendant removed his hand from his pocket, revealing a silver handgun. Although the lighting was dark, Plitt testified he was close enough to clearly see the weapon. Defendant threw the handgun, and Plitt tackled him. Plitt testified, defendant "wasn't able to throw [the handgun] too far," so it was within arm's reach. As Plitt struggled to apprehend him, defendant "began to reach [for the gun] . . . [,] so [Plitt] struck him in the face[,] and [Olivo] secured the weapon."

In deciding defendant's suppression motion, the judge found Plitt to be credible, noting he answered all questions consistently. The judge concluded that, considering Plitt's "training regarding firearm possession," the officer had a "reasonable articulable suspicion supported by the facts on the record that this defendant could have been carrying a weapon." Specifically the judge cited to defendant's presence in a "high-crime area at 10:34 p.m. at night," "the sagging of an object on the left side of the defendant's body, the walking away, the observations that the officer himself made, the frantically knocking at a door[,] coupled with the taking off running when the officers approached defendant." The judge noted the door defendant was frantically knocking upon was part of "a gated home," and his presence on the property "could've been a trespass." Based on

these considerations, the court concluded there was justification for the investigatory stop.

On appeal, defendant argues:

> POINT I
>
> BECAUSE THE POLICE HAD NEITHER PROBABLE CAUSE NOR REASONABLE SUSPICION TO CONDUCT AN INVESTIGATORY STOP, THE GUN SEIZED FROM DEFENDANT AS A RESULT OF THE UNLAWFUL STOP SHOULD HAVE BEEN SUPPRESSED.
>
> 1. BECAUSE THE POLICE DID NOT ORDER HALL TO STOP, AND ONLY ASKED HIM TO TALK TO THEM, THEY INITIATED A FIELD INQUIRY, NOT AN INVESTIGATORY STOP.
>
> 2. THE POLICE DID NOT HAVE REASONABLE SUSPICION FOR AN INVESTIGATORY STOP.
>
> 3. THE "PLAIN-VIEW" EXCEPTION DOES NOT APPLY.

We review a motion judge's factual findings in a suppression hearing with great deference. State v. Gonzales, 227 N.J. 77, 101 (2016). In our review of a "grant or denial of a motion to suppress [we] must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014); see also State v. Rockford, 213 N.J. 424, 440 (2013). We defer "to those findings of the trial judge which

are substantially influenced by his opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 223, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We owe no deference, however, to the trial court's legal conclusions or interpretation of the legal consequences that flow from established facts. Our review in that regard is de novo. State v. Watts, 223 N.J. 503, 516 (2015); State v. Vargas, 213 N.J. 301, 327 (2013).

Applying these standards, we find defendant's arguments to be without sufficient merit to warrant extensive discussion in a written opinion, R. 2:11-3(e)(2), and affirm substantially for the reasons articulated by the motion judge in her oral decision, adding only the following comments.

We conclude that the evidence adduced at the suppression hearing established that the police officer had a particularized and articulable suspicion of criminal activity, justifying an investigatory stop of defendant. An investigatory stop, also called a Terry[4] stop or an investigatory detention, "occurs during a police encounter when 'an objectively reasonable person' would feel 'that his or her right to move has been restricted.'" State

---

[4] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

v. Rosario, ____ N.J. ____, ____ (2017) (slip op. at 18) (quoting State v. Rodriquez, 172 N.J. 117, 126 (2002)). An investigatory stop "must be based on an officer's 'reasonable and particularized suspicion . . . that an individual has just engaged in, or was about to engage in, criminal activity.'" Id. at 18-19 (quoting State v. Stovall, 170 N.J. 346, 356 (2002)).

When reviewing whether the State has established a valid basis for an investigatory stop, we "give weight to 'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.'" State v. Citarella, 154 N.J. 272, 279-80 (1998) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)). Facts that might seem innocent when viewed in isolation can sustain a finding of reasonable suspicion when considered in the aggregate. Stovall, supra, 170 N.J. at 368 (citing Citarella, supra, 154 N.J. at 279-80). "[A] group of innocent circumstances in the aggregate[, accordingly,] can support a finding of reasonable suspicion." Ibid.

Applying these principles, we find Plitt formed a reasonable and particularized suspicion defendant had engaged in, or was about to engage in, criminal activity based upon the aggregate of his observations. Plitt saw defendant standing on a corner in a high-crime area, see State v. Pineiro, 181 N.J. 13, 26 (2004)

(considering an area's reputation for crime a relevant factor when assessing reasonable suspicion), wearing a balaclava and clothing that hung disproportionately to the left and, when defendant noticed Plitt, he attempted to conceal the left side of his body, blading. Pursuant to Plitt's training and expertise, his observations indicated defendant might have a concealed weapon. See Citarella, supra, 154 N.J. at 279 (citation and internal quotation marks omitted) (holding "courts are to give weight to the officer's knowledge and experience"). Upon observing Plitt, defendant began frantically banging on the front door of a nearby house. State v. Privott, 203 N.J. 16, 29 (2010) (considering defendant's nervous actions as a factor supporting reasonable suspicion); Elders, supra, 192 N.J. at 250 ("nervousness and conflicting statements, along with indicia of wrongdoing, can be cumulative factors in a totality of the circumstances analysis that leads to a finding of reasonable and articulable suspicion of ongoing criminality").

Based on the totality of these circumstances, Plitt was justified in conducting an investigatory stop, even before defendant ran away. Defendant's flight provided "an additional factor that heighten[s] the level of reasonable articulable suspicion already engendered by [defendant's] antecedent actions." Citarella, supra, 154 N.J. at 281; see also State v. Tucker, 136

N.J. 358, 409 (1994) (concluding flight, when combined with other evidence of criminal activity, can justify a suspect's detention or arrest).

The denial of defendant's suppression motion was supported by sufficient credible evidence, and it was legally correct. We have no cause to disturb defendant's conviction.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION