**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1253-18T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MICHAEL C. CEDOLA, JR., a/k/a
MIKE CEDOLA, MICHAEL
COREY CEDOLA, JR., and
MICHAEL CEDOLA,

     Defendant-Appellant.

_____

Argued February 11, 2020 – Decided March 17, 2020

Before Judges Hoffman and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Warren County, Indictment No. 17-07-0269.

Christopher George Olsen argued the cause for appellant (Schwartz, Hanna & Olsen, P.C., attorneys; Christopher George Olsen, on the briefs).

Dit Mosco, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (James L. Pfeiffer, Acting Warren County Prosecutor, attorney; Dit Mosco, of counsel and on the brief).

PER CURIAM

Defendant Michael C. Cedola appeals from a January 17, 2018 order denying his motion to suppress his confession, citing Miranda[1] violations. He seeks to have his confession overturned and his August 20, 2018 judgment of conviction (JOC) vacated, with a remand for further proceedings without the State having the benefit of his confession. We disagree and affirm.

I.

We discern the following facts from the motion record. In mid-December 2016, a confidential informant advised the Washington Township Police that he had information about a male known to him as "Mikey" (defendant) selling heroin in the area and was willing to assist the task force. The day after receiving the tip, detectives equipped the informant with an audio listening device and currency for a drug purchase. The detectives followed the informant and observed him contact one of defendant's suspected partners, Charles Pickett, who led the informant to defendant's residence. The record indicates that defendant was living at his mother's home. The informant purchased heroin from defendant and turned it over to detectives, who observed the entire transaction.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1253-18T3

On the evening of December 20, 2016, a previously approved search warrant was executed at defendant's residence in Washington. Based upon the previously approved search warrant, the officers forced their entry into the home and found thirty-four wax folds of suspected heroin and a stolen semi-automatic handgun. Defendant was arrested. Patrolman Stephen Pappalardo transported defendant to police headquarters for processing.[2]

Detective Walter Koch assisted in the search of defendant's residence. After discovering the stolen handgun, Koch returned to headquarters to interview defendant about the handgun and "not anything else that was occurring that evening." Defendant agreed to give Koch a statement about the handgun. Questioning began around 1:48 a.m. Koch informed defendant of his rights one-by-one and explained that defendant's decision to waive his rights was not final. Koch explained, "as we start talking if you change your mind; you can withdraw, you can say hey wait a second Detective Koch, changed my mind." Defendant quipped that he had "never been told that one before . . . ." Koch claimed he was a "straight shooter" and "want[ed] to make sure [defendant] under[stood]

---

[2] Defendant, in his testimony and brief, asserts he was taken into custody between 7:00 p.m. and 8:30 p.m. The police reports provided in the record note the incident time as 6:47 p.m. on the evening of December 13, 2016, when the recorded purchase took place, but 11:18 p.m. on the night of December 20, 2016, when the police executed the search warrant.

. . . ." After asking defendant if he would initial the Miranda waiver form and affix his signature, defendant responded, "Yeah absolutely."

During the interview, defendant explained that the handgun belonged to his friend's brother, who wanted defendant to hold it while he went on a trip to Alaska. Defendant maintained the handgun was legal, he did not buy or trade for it, and it was in the same spot his friend's brother left it in. Defendant's statements to Koch about the weapon provided the basis for the charges that he had possession of the weapon without a license, that was stolen, and after previously being convicted of a crime.

Following the interview, probable cause was established. On December 21, 2016, a complaint issued, and charged defendant with possession of a firearm during commission of a controlled dangerous substance (CDS) distribution related crime, a second-degree offense, N.J.S.A. 2C:39-4.1(a); certain persons not to have a firearm, a second-degree offense, N.J.S.A. 2C:39-7(b)(1); unlawful possession of a firearm, a second-degree offense, N.J.S.A. 2C:39-5(b)(1); distribution of heroin, a third-degree offense, N.J.S.A. 2C:35-5(b)(3); possession with the intent to distribute heroin, a third-degree offense, N.J.S.A. 2C:35-5(b)(3); receiving stolen property, a third-degree offense, N.J.S.A. 2C:20-7(a); possession of heroin, a third-degree offense, N.J.S.A. 2C:35-

10(a)(1); and possession of heroin, a third-degree offense, N.J.S.A. 2C:35-10(a)(1).

At a pre-indictment conference held on February 2, 2017, defendant pled not guilty and the case was transferred to Warren County. On July 24, 2017, a Warren County Grand Jury charged defendant with all of the above-stated charges.

Prior to trial, defendant moved to suppress his statement to Koch, arguing that he invoked his Miranda rights to other officers before he spoke to Koch and confessed in a videotaped statement to the charged crimes. Defendant further contended that several factors impaired his ability to knowingly and intelligently provide the videotaped statement. A Rule 104(c) hearing was conducted.

At the hearing, defendant testified that before giving his statement, he did not sleep "over [forty], [forty-eight] hours probably" because of "drug use [and] alcohol" resulting in "almost like a dreamlike state." He claimed to have gone even longer without an "actual meal," claiming he ate "maybe three days before that." Defendant testified that he was at headquarters from the time of his arrest, "between [7:00] and 8:30 that night," hours before the interview took place, which began at 1:48 a.m. He described being "handcuffed to a metal bar . . . [for] at least five hours" and feeling "very uncomfortable."

A-1253-18T3

Defendant also testified that prior to being interrogated by Koch, he asserted his right to remain silent "multiple times."  Defendant continued:

> I wasn't in understanding all of what I was doing as much as after I slept, you know, ate and kind of re-gathered a little bit. . . . I was so exhausted I can't even . . . understand myself on this tape.  I'm mumbling, I'm ranting, just going on and I feel like I was talking about irrelevant stuff.  I was, like delusional. . . . I can't say I understood what I was doing.

The court also considered the testimony of Koch, who worked for the Washington Township police department and had over twenty years of police experience.  Koch testified that defendant agreed to give a recorded statement regarding the handgun found in his bedroom, and Koch recalled reading defendant his Miranda rights.  Even though the department lost defendant's signed Miranda form, Koch testified that defendant "initialed by numbers [one] through [five] and he signed in the signature block of that form[,]" which was captured on the video footage.  Further, Koch testified that he provided defendant water before the interview, and he did not ask for anything else.  Koch asked defendant if he was under the influence of drugs or alcohol or anything, which would affect his ability to understand his rights, and defendant answered in the negative.

The trial court denied defendant's motion to suppress defendant's statements to Koch and the physical evidence seized from his residence. Additionally, the trial court found defendant was adequately informed of his right to remain silent under Miranda and that defendant "made a knowing and intelligent waiver of each and every one of his rights that were properly read to him prior to making the statement, and neither invoked nor attempted to invoke any of the rights thereafter." Curiously, the court noted that defendant thought he was helping out with a burglary—a different case—than the case he was arrested for when he gave his statement. In addition, the court found defendant was not credible and labeled his testimony as "convenient," questioning how defendant could claim he was in a "dream state" but have a specific recollection of asking for an attorney.

Conversely, the court found Koch's testimony to be credible and consistent with the videotaped statement. The court determined that Koch gave defendant a "very detailed warning" that was "slow" and "direct." Moreover, the court found Koch's testimony about his interaction with defendant to be honest, and that he had no reason to believe defendant requested an attorney before meeting with him. Accordingly, the court found defendant's statement to be admissible.

Defendant was subsequently deemed ineligible for Drug Court on March 1, 2018, and a trial date was set for April 16, 2018. However, on April 17, 2018, defendant's appointed counsel and newly retained counsel filed a joint certification seeking substitution of record. The trial court adjourned the trial to allow defendant's new counsel to prepare, and trial was rescheduled for May 29, 2018. Instead, on May 18, 2018, defendant pled guilty to counts two, three, four, six, and eight, preserving the right to appeal the denial of his motion to suppress. The State agreed to recommend dismissal of the other counts.

On August 15, 2018, the trial court sentenced defendant to six years in state prison on count two, which pursuant to the Graves Act, N.J.S.A. 2C:43-6(c), included a mandatory term of forty-two months of parole ineligibility. On both counts three and four, defendant was sentenced to five years flat in state prison. On count six, he was sentenced to six years in state prison with two years of parole ineligibility. On count eight, defendant was sentenced to six years in state prison, and he is statutorily required to serve five years of that sentence, pursuant to N.J.S.A. 2C:39-7(b)(1). The sentences on all counts were to run concurrently.

Defendant raises the following points on appeal:

POINT I

STANDARD OF PROOF ON APPEAL (not raised below).

POINT II

THE TRIAL COURT ERRED WHEN IT FOUND THAT THE STATE HAD MET ITS BURDEN IN PROVING THE DEFENDANT WAIVED HIS MIRANDA RIGHTS WHEN THE DEFENDANT TESTIFIED THAT HE ASSERTED HIS RIGHT TO REMAIN SILENT AND THE STATE FAILED TO PROVIDE ANY EVIDENCE TO CONTRADICT THE DEFENDANT'S TESTIMONY.

II.

In reviewing a trial court's ruling on a motion to suppress, we must defer to the court's factual findings provided they are supported by sufficient credible evidence in the record. State v. Scriven, 226 N.J. 20, 32-33 (2016) (citing State v. Elders, 192 N.J. 224, 243-44 (2007)). Our deference to the trial court's factual findings is especially appropriate when those findings "are substantially influenced by [an] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Gamble, 218 N.J. 412, 424-25 (2014) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). However, we owe no deference to the trial court's ruling

on an issue of law, which we review de novo. State v. Watts, 223 N.J. 503, 516 (2015) (citing State v. Vargas, 213 N.J. 301, 327 (2013)).

"[T]o safeguard a suspect's Fifth Amendment right against self-incrimination, confessions obtained during custodial interrogations are inadmissible as evidence unless the defendant has been advised of his or her constitutional rights." State v. Hubbard, 222 N.J. 249, 265 (2015) (citing Miranda, 384 U.S. at 492). The term "custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 265-66 (quoting Miranda, 384 U.S. at 444). "[I]f the questioning is simply part of an investigation and is not targeted at the individual because she or he is a suspect, the rights provided by Miranda are not implicated." Id. at 266 (quoting State v. Timmendequas, 161 N.J. 515, 614-15 (1999)).

We may not disturb the trial court's findings merely because we "might have reached a different conclusion were it the trial tribunal" or because "the trial court decided all evidence or inference conflicts in favor of one side" in a close case. State v. Johnson, 42 N.J. 146, 162 (1964). "The governing principle, then, is that '[a] trial court's findings should be disturbed only if they are so

clearly mistaken that the interests of justice demand intervention and correction.'" Robinson, 200 N.J. at 15 (quoting Elders, 192 N.J. at 244).

Here, the trial court considered the two issues raised by defendant regarding suppression of his statement: (1) he requested an attorney prior to making his statement; and (2) his will was overborne by the amount of time he was at police headquarters. The court considered the testimony of defendant and Koch and watched the videotape of defendant's interview.

Defendant testified:

> I was asked to make a statement multiple times. I refused to -- I didn't want to make the statements . . . . I was asked again, I said no. I was asked again, and said no, was asked again and said no.
>
> And then I believe it was actually Officer Koch himself that came up to me the last time and . . . just made it sound a lot different. He seems like a real nice guy, he was just explaining to me that you know, . . . it has nothing to do with the arrest, it has to do with a different matter. . . . [E]ven if I didn't want to make a statement, we should just go back there and talk a little bit about a burglary just to see if . . . I at least knew anything about a certain burglary is what he mentioned to me.

On cross-examination, defendant, for the first time, added that:

> In the holding area, when I was repeatedly asked to make a statement, I said no, I said . . . I think it would be better if I waited until I had a lawyer. And I said can I have a lawyer now and they said, it's not, you know,

11

it's not our responsibility to call your lawyer. I remember that.

Notwithstanding his testimony, defendant was unable to identify which officer denied him the opportunity to contact an attorney.

Here, the record supports the court's finding that defendant was not credible because he never expressed any hesitation or unwillingness to speak to Koch. To the contrary, the video and statement show that defendant was eager to tell his story, and there was never an indication he wanted or requested an attorney before the interview. Therefore, the court correctly determined defendant's statement was voluntary.

A voluntary statement by a defendant is admissible at trial. State v. Miller, 76 N.J. 392, 402 (1978). In determining the issue of voluntariness, "a court should assess the totality of all the surrounding circumstances." Ibid. "[R]elevant factors [to consider] include the suspect's age, education and intelligence, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved." Ibid. Based upon our careful review of the record, we are satisfied the relevant factors were considered by the trial court, aptly noting that defendant appeared "relaxed, willing and cooperative" in the video.

Here, even after Koch read defendant his <u>Miranda</u> rights, Koch emphasized that defendant was free to request counsel after waiving that right, or remain silent. Moreover, the court properly concluded that the questioning and length of time between interviews was not problematic, rejecting defendant's claim he was in a "dream state" because he specifically recalled asking for an attorney. The court duly noted defendant's "speech was certainly not slurred or stunted and quite frankly, very similar to the testimony that he . . . gave . . . in court."

We are convinced there is sufficient credible evidence in the record supporting the trial court's findings of fact. We also conclude that the judge's decision to deny defendant's motion to suppress was legally correct.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-1253-18T3