SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Antoine D. Watts** (A-21-14) (074556)

**Argued September 17, 2015 -- Decided December 2, 2015**

**ALBIN, J., writing for a unanimous Court.**

The issue in this appeal is whether the police acted unreasonably, in violation of the Fourth Amendment of the Unites States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in executing a warrant for the search of drugs on defendant.

On March 14, 2012, Detective Guillermo Valladares of the Elizabeth Police Department, believing that defendant was selling heroin from apartment number four at 224 Third Street, obtained a warrant to search defendant and his apartment. On that day, Detective Valladares and other officers set up a surveillance camera near defendant's apartment and waited for defendant to leave his apartment. Shortly before 5:00 p.m., defendant was seen leaving his apartment. He began walking southward on Third Street and entered Seaport Liquor Store on the corner of Magnolia Avenue and Third Street, located one and one-half blocks from his apartment. Upon exiting the liquor store, defendant was detained and patted down for weapons. One detective removed the apartment keys from defendant's pocket. The police decided not to conduct an "overly intrusive" search for drugs on the corner of Third Street, which was a busy thoroughfare of pedestrian and vehicular traffic. In Detective Valladares's view, such a search on a public street would have been "undignified."

Detective Valladares and another detective returned to the apartment with the keys and made a peaceable entry. The search of defendant's apartment uncovered no drugs or related paraphernalia. In the meantime, defendant was handcuffed for officer safety and transported back to his apartment in an unmarked police vehicle. Upon arriving in front of the apartment, defendant exited the vehicle. As he walked toward a marked patrol car under police escort, defendant shook his leg, and from his pants fell four bundles of heroin. Six minutes had elapsed from the moment of defendant's detention to the discovery of the drugs.

Defendant moved to suppress the drugs, claiming that the police were forbidden from detaining him to conduct a second search of his person after the pat down on the street. After a hearing, in an oral opinion, the trial court granted defendant's motion, concluding that after the initial search failed to uncover contraband, the continued detention of defendant in handcuffs in the hope of finding drugs on him violated the Constitution. The court's position was that the police had one shot to conduct the search correctly. The court held that the contraband later found by police during defendant's detention violated his constitutional rights and the United States Supreme Court's decision in Bailey v. United States, __ U.S. __ , 133 S. Ct. 1031, 185 L. Ed. 2d 19 (2013).

The Appellate Division granted the State's motion for leave to appeal and affirmed the trial court in an unpublished opinion. After the initial search did not uncover contraband, the appellate panel -- like the trial court -- discerned "no satisfactory explanation" for the need for a second search. It maintained that once the police exhausted the warrant authorizing the search of defendant's person outside the liquor store, the search warrant for the residence did not permit a later warrantless search of defendant in accordance with Bailey. According to the panel, none of the Bailey factors justified a warrantless search of defendant: defendant was not armed and thus not a danger to the officers searching the apartment; he was not in a position to hide or destroy evidence in the apartment; and, last, because no contraband was found on defendant's person or later in his apartment, law enforcement's interest in preventing flight was not an issue. The panel noted that the "terms of the search warrant" permitted "a search rather than multiple searches."

The Supreme Court granted the State's motion for leave to appeal.

1

**HELD:** The police did not act in an objectively unreasonable manner in violation of the Federal and State Constitutions by conducting an initial pat-down of defendant and detaining defendant for a thorough search in a more controlled, safe, and secure location.

1. The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect against "unreasonable searches and seizures" by government officials. Our constitutional jurisprudence expresses a decided preference that government officials first secure a warrant before conducting a search of a home or a person. A warrant for the search of a person carries with it implicit authority to detain that person for a reasonable period to complete the objective of the search. The period of the detention, however, must directly correspond to the purpose of the search and may not extend beyond that time. Reason suggests that a place where a person is detained pursuant to a search warrant may not always be suitable for conducting an intrusive search. A public street corner may not be the appropriate place to conduct a search for drugs that may be hidden in a person's clothes or on his body. In such a scenario, neither the Federal nor State Constitution forbids the police from moving the individual to a secure and private setting where the search can be conducted without exposing the person to public degradation and the police to potential dangers. Carrying out an intrusive search on a crowded street corner might be misunderstood by uninformed members of the public, or the person's friends or family, and spark a combustible incident. Public safety permits the police to take reasonable, commonsense measures to avoid interference with a search. (pp. 10-14)

2. The police made an objectively reasonable decision that compelling defendant to disrobe, partially or completely on a busy Elizabeth street corner where there was pedestrian and vehicular traffic could cause public humiliation to defendant. Such an intrusive search at that location might also have posed potential dangers to the police. The trial court ruled that the police had one of two choices: search defendant where he was detained or return him to the apartment or some other location and search him there. The court did not allow for a more nuanced approach consistent with constitutional jurisprudence and the notion of reasonableness. The Court rejects, as a matter of law, the trial court's all-or-nothing approach. To be sure, what occurred on the corner of Magnolia Avenue and Third Street constituted a search under both the Fourth Amendment and Article I, Paragraph 7 of the State Constitution. But it was an incidental search preliminary to fulfilling the main objective of the warrant -- a search of defendant for the presence of drugs and related paraphernalia. The limited search outside the liquor store did not trigger a constitutional requirement that the police conduct an intrusive search at the same location. The police did not act unreasonably by delaying completion of the search and returning defendant to the apartment. Only six minutes passed from defendant's detention until discovery of the drugs. That was not an unreasonable period to hold defendant for the purpose of completing the search of his person. To the extent a search occurred, it was not a second search but the reasonable continuation of a search that had not been completed outside the liquor store. (pp. 14-19)

3. Because defendant was lawfully detained pursuant to a warrant to search his person when the drugs were discovered, the Court need not reach the issue addressed in Bailey, supra. Unlike the present case, in Bailey, the police had a warrant to search only the residence, not the defendant-occupant. Bailey does not apply to a case involving a search warrant for a person. Therefore, the discussions of Bailey by the trial court and Appellate Division were not necessary to decide the suppression motion. (pp. 19-20)

      The judgment of the Appellate Division is **REVERSED** and the matter is **REMANDED** to the trial court for proceedings consistent with the Court's opinion.

      **CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, and SOLOMON join in JUSTICE ALBIN's opinion. JUSTICE FERNANDEZ-VINA and JUDGE CUFF (temporarily assigned) did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

      v.

ANTOINE D. WATTS,

    Defendant-Respondent.


      Argued September 17, 2015 - Decided December 2, 2015

      On appeal from the Superior Court, Appellate Division.

      Deborah C. Bartolomey, Deputy Attorney General, argued the cause for appellant (John J. Hoffman, Acting Attorney General of New Jersey, attorney).

      Mark H. Friedman, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney).


    JUSTICE ALBIN delivered the opinion of the Court.

    In this appeal, we must determine whether the police acted unreasonably, in violation of the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in executing a warrant for the search of drugs on defendant Antoine D. Watts.

    A warrant secured by the police authorized a no-knock entry and search of defendant's apartment and a search of defendant

1

for controlled dangerous substances. Before executing the search warrant, police officers waited until defendant left his apartment. The officers detained defendant one and one-half blocks away on a busy urban street, frisking him for weapons and taking his apartment keys to avoid a forced entry of his residence. The officers decided not to conduct a more intrusive search of his person in public view. Defendant was then placed in an unmarked police car and taken back to his apartment. After defendant exited the vehicle, four bundles of heroin fell from the leg of his pants.

Defendant moved to suppress the drugs, claiming that the police were forbidden from conducting a second search of his person after the pat down on the street. After a hearing, the trial court granted defendant's motion, concluding that because defendant was initially searched on a public sidewalk, the police were forbidden from searching him again at another location. The court found that the police acted unreasonably, and therefore unconstitutionally, by exposing defendant to successive searches. The court suppressed the drugs, and the Appellate Division affirmed.

We now hold that the police did not act in an objectively unreasonable manner in violation of our Federal and State Constitutions. The police were armed with a warrant to search defendant's person for drugs. The police officers were not

2

required to conduct a highly intrusive search of defendant on a public sidewalk in full view of pedestrian and vehicular traffic. Such a search would have offended defendant's dignitary interest and would have been contrary to the police interest in conducting a thorough search in a safe and secure setting. Patting down defendant for weapons before transporting him in a police vehicle was a necessary precaution, and taking his apartment keys to avoid battering down his door or alerting occupants was a prudent step falling within the scope of the warrant. The initial search was limited in scope and did not bar the police from moving defendant to a more controlled location to complete the search for drugs in accordance with the warrant. We therefore reverse and remand to the trial court for further proceedings.

I.

A.

Defendant was charged in a Union County indictment with third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1); third-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); third-degree possession of heroin with intent to distribute in a school zone, N.J.S.A. 2C:35-7; and second-degree possession of heroin with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1. Defendant moved to suppress drugs seized by the

3

police, alleging that he was subjected to an unconstitutional search.

The trial court conducted a suppression hearing at which the State called to the stand Detective Guillermo Valladares of the Elizabeth Police Department. No other witness testified at the hearing. The record consists of Detective Valladares's testimony, the affidavit in support of the warrant to search defendant and his apartment, the warrant itself, and a surveillance video taken of defendant on the day the search was executed. From this evidence, the facts emerge.

On March 14, 2012, Detective Valladares applied for a warrant to search defendant and his apartment. The detective filed an affidavit with a Superior Court judge detailing his reasons for believing that defendant was selling heroin from apartment number four at 224 Third Street in the City of Elizabeth. Based on the affidavit, the judge found probable cause to issue a warrant authorizing the police to conduct a no-knock entry and search of the Third Street apartment and a search of defendant for such items as heroin, glassine envelopes, vials, and other paraphernalia related to drug distribution.

Detective Valladares testified that, on March 14, police officers gathered at a staging area in preparation to execute the search and activated a fixed surveillance camera capable of

4

covering defendant's apartment and the immediate environs. The plan was to wait until defendant left his apartment and then seize the apartment keys to avoid a forced entry into the residence. As Detective Valladares explained, the police did not want to "break any doors [or] cause any heart attacks."

Shortly before 5:00 p.m., the surveillance camera recorded defendant leaving his apartment building and walking southward on Third Street. Approximately eight police officers sprang into action. Five officers, including Detective Valladares, detained defendant as he exited Seaport Liquor Store on the corner of Magnolia Avenue and Third Street, located one and one-half blocks from his apartment. Defendant was wearing a hooded sweatshirt, a shirt, jeans, and boots. One detective patted down defendant for weapons, and another detective removed the apartment keys from defendant's pocket. No article of defendant's clothing was removed during this limited search. The police decided not to conduct an "overly intrusive" search for drugs on the corner of Third Street, which was a busy thoroughfare of pedestrian and vehicular traffic. In Detective Valladares's view, such a search on a public street would have been "undignified."

Detective Valladares and another detective returned to the apartment with the keys and made a peaceable entry. In the meantime, defendant was handcuffed for officer safety and

5

transported back to his apartment in an unmarked police vehicle.

Upon arriving in front of the apartment, defendant exited the

vehicle.  As he walked toward a marked patrol car under police

escort, defendant shook his leg, and from his pants fell four

bundles of heroin.[1]  Six minutes had elapsed from the moment of

defendant's detention to the discovery of the drugs.  The search

of defendant's apartment uncovered no drugs or related

paraphernalia.

B.

In an oral opinion, the trial court granted defendant's

motion to suppress.  The court concluded that the police could

not lawfully conduct successive searches of defendant based on

the same search warrant.  The court stated that the police had

"a right to search [defendant]," but after the initial search

failed to uncover contraband, the continued detention of

defendant in handcuffs in the hope of finding drugs on him

violated the Constitution.  The court's position was that the

police had one shot to conduct the search correctly.  According

to the court, the police "could have searched him one time by

---

[1] Detective Valladares did not observe firsthand the recovery of the heroin.  Before giving his testimony, he reviewed the videotape of the incident, which showed a police captain and sergeant walking behind defendant.  One of those officers advised Detective Valladares that the heroin dropped from the leg of defendant's pants.  The surveillance videotape shows a police officer walking behind defendant, picking up an item, and showing it to a fellow officer.

6

bringing him back to the home immediately" or one time at the scene where "[t]hey opted to search him." In the court's view, the police were at fault for the initial "incompetent search" that uncovered no contraband. The court maintained that after the initial street search, the police "had no right to detain him further" and "no right to put him in a squad car and bring him back to the scene." The court held that the contraband later found by police during defendant's detention violated his constitutional rights and the United States Supreme Court's decision in Bailey v. United States, __ U.S. __, 133 S. Ct. 1031, 185 L. Ed. 2d 19 (2013).[2]

## II.

The Appellate Division granted the State's motion for leave to appeal and affirmed the trial court in an unpublished opinion. The appellate panel agreed with the trial court that the warrant authorizing the search of defendant's person "permitted the police to search [him] when they stopped him, even though he was no longer in or adjacent to his apartment." However, after the initial search did not uncover contraband, the panel -- like the trial court -- discerned "no satisfactory

---

[2] The court also pointedly noted that, based on the record, including the surveillance videotape, it could not be determined from what part of defendant's clothing the bundles of heroin fell because no one from "the take-down group" was called to testify.

7

explanation" for the need for a second search.  It maintained that once the police exhausted the warrant authorizing the search of defendant's person outside the liquor store, the search warrant for the residence did not permit a later warrantless search of defendant in accordance with <u>Bailey</u>.  The panel described <u>Bailey</u> as a case involving "the warrantless search of an individual incident to the execution of a search warrant" of premises where the individual had recently left.  According to the panel, none of the <u>Bailey</u> factors justified a warrantless search of defendant:  defendant was not armed and thus not a danger to the officers searching the apartment; he was not in a position to hide or destroy evidence in the apartment; and, last, because no contraband was found on defendant's person or later in his apartment, law enforcement's interest in preventing flight was not an issue.  <u>Bailey</u>, <u>supra</u>, __ U.S. at __, 133 <u>S. Ct.</u> at 1038-41, 185 <u>L. Ed.</u> 2d at 29-32.  The panel noted that the "terms of the search warrant" permitted "a search rather than multiple searches."  Finally, the panel concluded that the judge's fact findings were entitled to deference.  For those reasons, the panel upheld the judge's order suppressing the evidence.

We granted the State's motion for leave to appeal.

III.

8

The State submits that the warrant to search defendant did not require "the police to search defendant's person once and thoroughly in the place where he was first detained" -- a busy, public sidewalk in the City of Elizabeth. Instead, the State argues that the police acted in an objectively reasonable manner by frisking defendant for weapons, securing the apartment keys, and transporting him "to a more suitable private location for a complete search." The State maintains that Bailey is inapplicable because the justification for defendant's detention was the warrant to search his person, not the warrant to search his premises. The State urges the reversal of the order suppressing the evidence on the ground that the police acted in strict conformity with the Federal and State Constitutions.

Defendant urges that we affirm the Appellate Division. He contends that the panel correctly deferred to the trial court's factual findings at the suppression hearing. According to defendant, the trial court did not accept Detective Valladares's testimony about defendant's encounter with the police. Instead, defendant insists that the court found that "the police conducted a full search when they first detained [him], not just a pat-down, and that the second search was, indeed, a search," not an abandonment of drugs. Defendant submits that a second or new search of defendant at 224 Third Street was not authorized by the warrant. Moreover, defendant claims that the search of

9

his person cannot be justified under Bailey because he did not pose a threat to the search of the premises.

IV.

The question before us is whether defendant was the subject of an unreasonable seizure and search after the police conducted the initial search outside the liquor store where defendant was first detained.

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect against "unreasonable searches and seizures" by government officials.[3] Our constitutional jurisprudence expresses a decided preference that government officials first secure a warrant before conducting a search of a home or a person. See State v. Edmonds, 211 N.J. 117, 129 (2012) (citing State v. Frankel, 179 N.J. 586, 597-98, cert. denied, 543 U.S. 876, 125 S. Ct. 108, 160 L. Ed. 2d 128 (2004)). Police officers are relieved of the

---

[3] The Fourth Amendment and Article I, Paragraph 7 use virtually identical language. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
>
> [U.S. Const. amend. IV; see also N.J. Const. art. I, ¶ 7.]

constitutional obligation to secure a warrant only if the search falls within "one of the . . . 'well-delineated exceptions to the warrant requirement.'" Id. at 130 (internal quotation mark omitted) (quoting Frankel, supra, 179 N.J. at 598). A search executed pursuant to a warrant is presumptively valid, and "a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting State v. Jones, 179 N.J. 377, 388 (2004)).

Defendant does not challenge the validity of the warrant to search his person or apartment. He does not dispute that the search warrant, issued by a Superior Court judge, was based on a finding of probable cause to believe that he was dealing drugs. Rather, he claims that the search warrant for his person was fully executed outside the liquor store and that the police had no basis to continue holding him after failing to find contraband on him. Thus, the narrow issue is whether the police acted in an objectively reasonable manner in detaining defendant after the initial search.

"The touchstone of the Fourth Amendment and Article I, [P]aragraph 7 of the New Jersey Constitution is reasonableness." State v. Hathaway, 222 N.J. 453, 476 (2015) (alteration in original) (internal quotation marks omitted); see also United

11

States v. Knights, 534 U.S. 112, 118-19, 122 S. Ct. 587, 591, 151 L. Ed. 2d 497, 505 (2001).  In assessing the reasonableness of police conduct, we must consider the circumstances facing the officers who had to make on-the-spot decisions in a fluid situation.  See State v. Bruzesse, 94 N.J. 210, 228 (1983) ("There are numerous situations that arise in law enforcement that are unique and call for a special response."), cert. denied, 465 U.S. 1030, 104 S. Ct. 1295, 79 L. Ed. 2d 695 (1984).  Under the Fourth Amendment and Article I, Paragraph 7 of the New Jersey Constitution, "the proper inquiry for determining the constitutionality of a search-and-seizure is whether the conduct of the law enforcement officer who undertook the search was objectively reasonable."  Id. at 219.  The test is not whether there were other reasonable or even better ways to execute the search, for hindsight and considered reflection often permit more inspired after-the-fact decision-making.  Hathaway, supra, 222 N.J. at 469 ("[T]hose who must act in the heat of the moment do so without the luxury of time for calm reflection or sustained deliberation." (quoting Frankel, supra, 179 N.J. at 599)).  For purposes of our Federal and State Constitutions, it is enough that the police officers, in performing their duties, acted in an objectively reasonable fashion.

A warrant for the search of a person carries with it implicit authority to detain that person for a reasonable period

to complete the objective of the search.  See Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325, 75 L. Ed. 2d 229, 238 (1983) (plurality opinion) (stating that in case of warrantless search, "[t]he scope of the detention must be carefully tailored to its underlying justification.").  The period of the detention, however, must directly correspond to the purpose of the search and may not extend beyond that time.  See ibid.

A warrant authorizing the search of a person for drugs and related paraphernalia allows the police to search for such evidence wherever it may normally be secreted, such as in clothes, boots, or on the body.  See United States v. Ross, 456 U.S. 798, 820, 102 S. Ct. 2157, 2170, 72 L. Ed. 2d 572, 591 (1982) ("A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found . . . ."); State v. Colin, 809 P.2d 228, 229 (Wash. Ct. App. 1991) (denying suppression of drugs discovered during execution of warrant to search defendant, who was made to remove his clothes).  Reason suggests that a place where a person is detained pursuant to a search warrant may not always be suitable for conducting an intrusive search.  A public street corner may not be the appropriate place to conduct a search for drugs that may be hidden in a person's clothes or on his body.

In such a scenario, neither the Federal nor State Constitution forbids the police from moving the individual to a

13

secure and private setting where the search can be conducted without exposing the person to public degradation and the police to potential dangers. See Illinois v. Lafayette, 462 U.S. 640, 645, 103 S. Ct. 2605, 2609, 77 L. Ed. 2d 65, 71 (1983) ("Police conduct that would be impractical or unreasonable -- or embarrassingly intrusive -- on the street can more readily -- and privately -- be performed at the station."). Carrying out an intrusive search on a crowded street corner might be misunderstood by uninformed members of the public, or the person's friends or family, and spark a combustible incident. Public safety permits the police to take reasonable, commonsense measures to avoid interference with a search.

V.

A.

We now apply those principles to the facts before us. In doing so, we begin with our standard of review. We are bound to uphold a trial court's factual findings in a motion to suppress provided those "findings are 'supported by sufficient credible evidence in the record.'" State v. Elders, 192 N.J. 224, 243-44 (2007) (quoting State v. Elders, 386 N.J. Super. 208, 228 (App. Div. 2006)). Deference to those findings is particularly appropriate when the trial court has the "'opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy.'" Id. at 244

14

(quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Nevertheless, we are not required to accept findings that are "clearly mistaken" based on our independent review of the record. Ibid. Moreover, we need not defer "to a trial or appellate court's interpretation of the law" because "[l]egal issues are reviewed de novo." State v. Vargas, 213 N.J. 301, 327 (2013).

### B.

It bears emphasizing that the police had a warrant authorizing not only a no-knock entry and search of defendant's apartment, but also a search of defendant's person. The trial court did not second-guess the police strategy of waiting until defendant left his apartment to execute the warrant. Seizing defendant outside the apartment and securing the apartment keys allowed for a peaceable entry and minimized the potential for violence and damage to property.

The police detained defendant after he left a liquor store on a busy Elizabeth street corner where there was pedestrian and vehicular traffic. Defendant was wearing a hooded sweatshirt, a shirt, jeans, and boots. Drugs or paraphernalia could have been secreted in his clothes or on his body. The police made an objectively reasonable decision that compelling defendant to disrobe, partially or completely, in that public setting could cause public humiliation to defendant. Such an intrusive search

15

at that location might also have posed potential dangers to the police.

However, the court ruled that the police had one of two choices: search defendant where he was detained or return him to the apartment or some other location and search him there. The court did not allow for a more nuanced approach consistent with constitutional jurisprudence and the notion of reasonableness. We reject, as a matter of law, the trial court's all-or-nothing approach.

The police decided to conduct a thorough search of defendant at another location. Before placing him in a police vehicle, the officers had a right to pat him down to ensure that he was not armed with a weapon. Cf. State v. Gibson, 218 N.J. 277, 299 (2014) ("[O]nce an officer lawfully arrests a suspect, he has the right and duty to search him for weapons and contraband before placing him in a patrol car." (citing Chimel v. California, 395 U.S. 752, 762-63, 89 S. Ct. 2034, 2040, 23 L. Ed. 2d 685, 694 (1969))). Further, given that the police had a warrant for a no-knock entry into defendant's residence, it was objectively reasonable to secure the apartment keys from defendant to avoid having to break down the door or alert other occupants in the apartment. The fundamental purpose of the no-knock warrant was to give the police the benefit of the element

16

of surprise.  Possession of the apartment keys advanced that goal.

To be sure, what occurred on the corner of Magnolia Avenue and Third Street constituted a search under both the Fourth Amendment and Article I, Paragraph 7 of our State Constitution. But it was an incidental search preliminary to fulfilling the main objective of the warrant -- a search of defendant for the presence of drugs and related paraphernalia.  We cannot conclude that the limited search outside the liquor store triggered a constitutional requirement that the police conduct an intrusive search at the same location.  As noted earlier, the touchstone of the Fourth Amendment and Article I, Paragraph 7 of our State Constitution is reasonableness.  The warrant permitted the police to reasonably continue the search in a secure setting. See State v. Hai Kim Nguyen, 419 N.J. Super. 413, 426-27 (App. Div. 2011), (stating that warrant authorized reasonable continuation of search of car, which remained in continuous police custody), certif. denied, 108 N.J. 339 (2011).

We do not take issue with the trial court's factual findings but rather with its legal conclusions.  Detective Valladares testified to the limited nature of the initial search -- a search for weapons and the apartment keys.  Defendant was not ordered to remove articles of clothing, a natural step in conducting a search for drugs pursuant to the warrant.  The

17

trial court never found, as defendant contends, that the police conducted a complete search of defendant at the corner of Magnolia Avenue and Third Street.  Rather, the court determined that the police conducted an "incompetent search" at that location, a premise based on the court's mistaken understanding that once the search began, even for the limited purpose of frisking for weapons and seizing the apartment keys, an intrusive search for drugs had to continue in a public place to its inevitable conclusion.  The court maintained that because the police officers did not find contraband on defendant during the initial search, they were obliged to release him.

We disagree with the trial court and the Appellate Division, which affirmed the suppression order.  The police did not have to proceed in some formulaic or mechanistic manner.  See Bruzzese, supra, 94 N.J. at 228.  Discretion and judgment must play a role in such matters.  In deciding to search defendant at another location, the police were permitted to pat him down for weapons before transporting him in a vehicle.  We must view the police actions against the standard of objective reasonableness.  By that standard, the police did not act unreasonably by delaying completion of the search and returning defendant to the apartment.  Defendant was not unconstitutionally detained when the four bundles of heroin fell from the leg of his pants after he exited from the unmarked

18

police car in front of his apartment.[4]  Only six minutes passed from defendant's detention until discovery of the drugs.  That was not an unreasonable period to hold defendant for the purpose of completing the search of his person.  To the extent a search occurred, it was not a second search but the reasonable continuation of a search that had not been completed outside the liquor store.

### C.

Because we have determined that defendant was lawfully detained pursuant to a warrant to search his person when the drugs were discovered, we need not reach the issue addressed in Bailey, supra, __ U.S. __, 133 S. Ct. 1031, 185 L. Ed. 2d 19.  There, the United States Supreme Court held that a warrant to search a residence does not authorize the police to detain an occupant who is not in "the immediate vicinity of [the] premises to be searched."  Id. at __, 133 S. Ct. at 1043, 185 L. Ed. 2d at 34.  Unlike the present case, in Bailey, the police had a warrant to search only the residence, not the defendant-

---

[4] We note that the State failed to call to the stand the police officer or officers who witnessed the discovery of the four bundles of heroin.  Although hearsay is permissible in suppression hearings, subject to N.J.R.E. 104(a), the trial court is the arbiter of the weight to be given to such evidence when the state forgoes presenting available firsthand testimony concerning the discovery of contraband.  The issue in this case, however, concerned not so much discovery of the heroin, but the legality of defendant's continued detention after the initial search.

19

occupant.  Id. at __, 133 S. Ct. at 1036, 185 L. Ed. 2d at 26-27.  The defendant-occupant in Bailey was stopped approximately one mile from his apartment after the search commenced.  Ibid. The Supreme Court declared that, under the circumstances, the search warrant for the premises could not justify the detention of the defendant-occupant.  Id. at __, 133 S. Ct. at 1042-43, 185 L. Ed. 2d at 33-34.

Bailey does not apply to a case involving a search warrant for a person.  Therefore, the discussions of Bailey by the trial court and Appellate Division were not necessary to decide the suppression motion.

VI.

For the reasons expressed, we find that the trial court erred in suppressing the evidence.  We therefore reverse the judgment of the Appellate Division affirming the trial court's suppression order.  We remand to the trial court for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, and SOLOMON join in JUSTICE ALBIN's opinion.  JUSTICE FERNANDEZ-VINA and JUDGE CUFF (temporarily assigned) did not participate.

20

SUPREME COURT OF NEW JERSEY

NO. ___A-21___                     SEPTEMBER TERM 2014

ON APPEAL FROM _____Appellate Division, Superior Court_____


STATE OF NEW JERSEY,

     Plaintiff-Appellant,

         v.

ANTOINE D. WATTS,

     Defendant-Respondent.


DECIDED _____December 2, 2015_____
_____Chief Justice Rabner_____ PRESIDING
OPINION BY _____Justice Albin_____
CONCURRING/DISSENTING OPINION BY_____
DISSENTING OPINION BY _____

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | -------------------- | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | -------------------- | |
| TOTALS | 5 | |