**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1134-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TERRELL E. CURRY, JR.,

     Defendant-Appellant.

_____

Submitted September 30, 2020 – Decided November 13, 2020

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 16-08-1275.

Joseph E. Krakora, Public Defender, attorney for appellant (Scott M. Welfel, Assistant Deputy Public Defender, of counsel and on the briefs).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Patrick F. Galdieri, II, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Terrell Curry, Jr. was arrested on suspicion of driving while intoxicated. In a search of his person incident to his arrest, he was found to be in possession of two handguns. His motion to suppress the seizure of the guns was denied and he pled guilty to two counts of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). Defendant also pled guilty to two other crimes arising out of separate incidents: second-degree unlawful possession of an assault firearm, N.J.S.A. 2C:39-5(f); and third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a).

On the convictions for unlawful possession of the handguns, defendant was sentenced to concurrent prison terms of six years with forty-two months of parole ineligibility as prescribed by the Graves Act, N.J.S.A. 2C:43-6(c). On the conviction for possession of an assault firearm, defendant was sentenced to a consecutive prison term of five years with forty-two months of parole ineligibility as prescribed by the Graves Act. On the conviction for theft, defendant was sentenced to three years in prison. That sentence was run concurrent to his sentence for the convictions of the unlawful possession of the handguns.

Defendant argues that there was no probable cause for his arrest and his motion to suppress the seizure of the handguns should have been granted. We

disagree and affirm his convictions. Defendant also contends that his sentence was excessive because the court failed to find a mitigating factor, erred in finding an aggravating factor, and failed to properly analyze the consecutive sentences. We also disagree with those arguments and affirm his sentence.

## I.

In this appeal, defendant challenges his convictions for unlawful possession of two handguns. Those charges arose out of defendant's arrest in March 2015 for driving while intoxicated. On the morning of March 5, 2015, the car defendant was driving struck a guardrail on Interstate Highway 287.

An evidentiary hearing was conducted on defendant's motion to suppress on September 21, 2017. One witness testified at that hearing: New Jersey State Police Trooper Hector Rodriguez. The State also submitted into evidence a DVD with video footage copied from the mobile video recorder (MVR) on the trooper's vehicle.

Rodriguez testified that on March 5, 2015, just after 8 a.m., he received a report of a motor vehicle accident near exit 10 on the northbound side of

Interstate 287.[1]   He responded and when he arrived two Piscataway police officers and EMTs with an ambulance were already at the scene.

Rodriguez spoke to the police officers and surveyed the scene.  He saw a Mercury Mountaineer, which had struck a guardrail and sustained front-end damage.  He noted that no other vehicle was involved in the accident.

Rodriguez learned that there had been a driver and six passengers in the Mountaineer.  The six passengers were already in the ambulance and Rodriguez was informed that some of them were complaining of injuries.  Rodriguez observed that the driver was outside the vehicle walking around.  He later learned that the driver was defendant.  Rodriguez approached and spoke with defendant.  He testified he detected an odor of alcohol coming from defendant's mouth and observed that defendant had "bloodshot watery eyes with droopy lids."  He also thought defendant's speech was slow and slurred.

Rodriguez asked defendant what happened and defendant responded that he had been driving in the center lane, tried to take exit 10, which was to the right, he lost control of the vehicle, and it hit the guardrail.  Defendant also told Rodriguez that he had been drinking at a party the night before.

---

[1] During questioning, the date of the incident was occasionally erroneously referred to as March 3, 2015.  In his testimony, Rodriguez stated that the incident occurred on March 5, 2015.  The MVR bears a date-stamp of March 5, 2015.

Rodriguez then directed defendant to perform two field sobriety tests: the walk and turn test and the one-leg-stand test. During Rodriguez's testimony, the State introduced the MVR video into evidence and played it.

Rodriguez testified that defendant did not pass or fail either test but displayed certain clues that caused him to suspect that defendant had been driving while intoxicated. Rodriguez went on to explain that based on the totality of the circumstances he observed at the scene of the accident, he believed he had probable cause to arrest defendant for driving while intoxicated.

Accordingly, defendant was placed under arrest. Rodriguez advised defendant of his Miranda[2] rights. He then asked defendant if he had anything on him that could harm Rodriguez. Defendant responded that he had two guns, one in his right pants' pocket and another in his left front pants' pocket. Defendant was searched and found to possess two loaded handguns, a revolver and a semi-automatic pistol.

Thereafter, defendant was taken to "headquarters" where he was strip-searched. During that search, defendant was found to be in possession of twenty-three pills that were later confirmed to be Oxycodone. Sometime

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

 A-1134-18T4

between 10 a.m. and 11 a.m. that same day, defendant was given a breathalyzer test and his results revealed that he had a blood alcohol concentration of 0.07%.

Following the testimony by Rodriguez, counsel presented oral arguments on the motion to suppress. The motion court then reserved decision. On October 20, 2017, the court issued a written opinion and order denying the motion to suppress the seizure of the two handguns.

The court found that there was probable cause to arrest defendant on suspicion of driving while intoxicated and the search incident to his arrest was lawful. Analyzing the arrest, the court found that defendant had admitted to consuming alcohol before the accident, his breath smelled of alcohol after the accident, and there was no evidence that the accident was caused by anything other than defendant losing control of the vehicle. The court found that those facts, when considered in the totality of the circumstances, gave rise to probable cause to believe that defendant had been driving while intoxicated.

In making its findings, the court did not credit Rodriguez's testimony that defendant had slow or slurred speech. Instead, the court reviewed the MVR video and found that defendant's speech was not slow or slurred.

The court also found that defendant had not failed the field sobriety tests. Instead, the court found that there was conflicting evidence as to whether the

tests were properly administered and, accordingly, the court did not rely on them.

Finally, the court found that the search of defendant's person was lawful because it was conducted incident to his arrest. The court also found that the Oxycodone pills were lawfully seized because those pills would have inevitably been found during an inventory search of defendant's property following his arrest.

In connection with his arrest in March 2015 and the seizure of the handguns, defendant was charged with nine crimes: two counts of second-degree unlawful possession of a weapon; three counts of fourth-degree assault by auto, N.J.S.A. 2C:12-1(c)(2); three counts of fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(3); and third-degree possession of Oxycodone without a prescription, N.J.S.A. 2C:35-10(a)(1).

Defendant was also charged with multiple other crimes under two indictments arising out of separate incidents. Under one of those separate indictments, defendant was charged with three third-degree theft-related offenses. Under the other indictment, defendant and eight other co-defendants were charged with numerous drug and weapons-related offenses.

A-1134-18T4

Following the denial of his motion to suppress the seizure of the handguns, defendant entered into a plea agreement to resolve the charges in all three indictments. He pled guilty to two counts of unlawful possession of a handgun, one count of theft, and one count of unlawful possession of an assault firearm. As part of the plea agreement, the State agreed to dismiss all the other charges and to recommend that he be sentenced to three years in prison for the theft conviction, six years in prison for the unlawful possession of the handguns, and six years in prison for the unlawful possession of the assault firearm. Defendant was sentenced consistent with the recommendation made in the plea agreement.

II.

On appeal, defendant challenges his convictions for the possession of the handguns and his sentence. He articulates his arguments as follows:

> POINT I – BECAUSE THE STATE FAILED TO ESTABLISH PROBABLE CAUSE TO ARREST CURRY FOR DRIVING WHILE INTOXICATED, THE FRUITS OF THE SUBSEQUENT WARRANTLESS SEARCH SHOULD HAVE BEEN SUPPRESSED.
>
> A. The Accident, Admission to Having a Drink At Least Eight Hours Earlier, and Slight Smell of Alcohol on the Breath Did Not Add Up to a "Well Grounded Suspicion" that Curry Was "So Affected In Judgment Or Control As To Make It Improper For Him To Drive."

8

B.   The Judge Erred in Finding that the Accident "Occurred For No Explainable Reason Other Than Defendant's Mishandling Of His Vehicle" and in Finding that Curry's Breath Smelled of Alcohol.

   i.   The Judge's Finding that the Accident "Occurred For No Explainable Reason Other Than Defendant's Mishandling Of His Vehicle" Was Clearly Mistaken and Not Supported by Sufficient Credible Evidence.

   ii.  The Judge's Finding that Rodriguez Smelled Alcohol on Curry's Breath Was Not Supported by Sufficient Credible Evidence.

POINT II – THE TRIAL COURT ERRED IN FAILING TO FIND MITIGATING FACTOR 11, FINDING AGGRAVATING FACTOR 9, AND IN FAILING TO CONDUCT A FULL YARBOUGH ANALYSIS.

A.   Because there was Ample Evidence in the Record that Curry's Incarceration Would Be an Excessive Hardship to Curry's Five Children, the Court Erred in Failing to Find Mitigating Factor 11.

B.   Because the Court Found that Having Children Had Already Deterred Curry from Committing New Criminal Acts, the Court Erred in Finding Aggravating Factor 9.

C.   In Failing to Consider the Overall Length of the Aggregate Sentence Before Deciding Whether to Impose a Consecutive Sentence, the Court Failed to Conduct a Full Yarbough Analysis.

9

We are not persuaded by any of these arguments.

A.    The Seizure of the Handguns

Defendant argues that Rodriguez did not have probable cause to arrest him and, therefore, the guns seized incident to his unlawful arrest should have been suppressed.  We disagree.

Appellate review of a denial of a motion to suppress physical evidence following an evidentiary hearing is limited.  Factual findings made by the trial court will be disturbed only when they are not supported by sufficient credible evidence in the record.  State v. Hagans, 233 N.J. 30, 37 (2018) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)).  This deference is required "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'"  Gamble, 218 N.J. at 424-25 (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).  Accordingly, we reverse "only when the trial court's determination is 'so clearly mistaken that the interests of justice demand intervention and correction.'"  Hagans, 233 N.J. at 37-38 (quoting Gamble, 218 N.J. at 425).  The same deferential standard applies to appellate review of findings based on video-recorded evidence.  Id. at 38.  We review the trial court's legal determinations de novo.  Ibid. (citing Gamble, 218 N.J. at 425).

The United States Constitution and the New Jersey Constitution protect individuals from "'unreasonable searches and seizures' by government officials." Ibid. (quoting State v. Watts, 223 N.J. 503, 513 (2015)).  A warrantless search is presumptively unreasonable.  Ibid.  To overcome this presumption, the State must prove by a preponderance of the evidence that the search fell "within one of the few well-delineated exceptions to the warrant requirement."  Id. at 38-39 (quoting State v. Bryant, 227 N.J. 60, 69-70 (2016)).  One such exception is a search incident to a lawful arrest.  State v. Minitee, 210 N.J. 307, 318 (2012).

The validity of a search incident to an arrest depends on whether there was probable cause to arrest defendant.  See State v. Dangerfield, 171 N.J. 446, 456 (2002).  Probable cause exists where there is "'well grounded' suspicion that a crime has been or is being committed."  State v. Sullivan, 169 N.J. 204, 211 (2001) (quoting State v. Waltz, 61 N.J. 83, 87 (1972)).  It "must be something more than a raw, unsupported suspicion, [but] it may be something less than the proof needed to convict."  State in the Interest of A.D., 212 N.J. 200, 220 (2012) (alteration in original) (quoting State in the Interest of B.G., 247 N.J. Super. 403, 409 (App. Div. 1991)).  Accordingly, "[a] showing of probable cause 'is not a high bar.'"  State v. Hemenway, 239 N.J. 111, 136-37 (2019) (quoting State v. Pinkston, 233 N.J. 495, 509 (2018)).

"In determining whether there was probable cause to make an arrest, a court must look to the totality of the circumstances and view those circumstances 'from the standpoint of an objectively reasonable police officer.'" State v. Basil, 202 N.J. 570, 585 (2010) (citations omitted). "Thus, although several factors considered in isolation may not be enough, cumulatively those pieces of information may 'become sufficient to demonstrate probable cause.'" State v. Daniels, 393 N.J. Super. 476, 486 (App. Div. 2007) (quoting State v. Zutic, 155 N.J. 103, 113 (1998)).

Probable cause to make an arrest for driving while intoxicated exists when an arresting officer has reasonable grounds to believe that a driver is in a condition that "so affects the judgment or control of a motor vehicle operator as to make it improper for him to drive on the highway." State v. Bealor, 187 N.J. 574, 589 (2006) (quoting State v. Tamburro, 68 N.J. 414, 421 (1975)). As with any arrest, whether probable cause exists to arrest an individual for driving while intoxicated "is a fact-sensitive inquiry." State in the Interest of A.D., 212 N.J. at 217; see also State v. Jones, 437 N.J. Super. 68, 75 (App. Div. 2014) (noting smell of alcohol emanating from driver's breath and bloodshot eyes post-accident established probable cause).

The motion court here found that Rodriguez had probable cause to arrest defendant on suspicion of driving while intoxicated. As already noted, the court based that finding on the totality of the circumstances, which included that a single-car accident had taken place, defendant's breath smelled of alcohol, and defendant admitted that he had been drinking alcohol at a party the night before. Those findings are all supported by substantial credible evidence in the record and we discern no error in the court's conclusion that those facts constituted probable cause.

Defendant takes issue with each of the components of the motion court's finding of probable cause. In that regard, defendant argues that the court's reliance on the one-car accident was a mistake, which was not supported by sufficient credible evidence. Defendant also challenges the sufficiency of the finding that defendant's breath smelled of alcohol.

The only witness who testified at the suppression hearing was Trooper Rodriguez. He clearly did not credit defendant's explanation of how the accident occurred. Accordingly, the trial court was not required to accept the explanation provided by defendant to Rodriguez. Without that explanation there was no explanation for how the accident occurred.

Rodriguez testified that defendant's breath smelled of alcohol. While the court never made an express credibility finding, the court clearly relied on Rodriguez's testimony concerning the smell. Furthermore, defendant's admission that he had been drinking at a party is another fact supporting a finding of probable cause.

The court correctly ruled that because the arrest of defendant was lawful, the search incident to his arrest was also lawful. Indeed, defendant does not challenge the validity of the actual search. Accordingly, we discern no basis to reverse the denial of the motion to suppress.

B.    The Sentence

Defendant challenges his sentence, contending that the sentencing court erred in (1) failing to find mitigating factor eleven - - imprisonment would entail excessive hardship to defendant's dependents; (2) finding aggravating factor nine - - the need to deter defendant and others from engaging in criminal activity; and (3) failing to conduct a full analysis before imposing consecutive sentences. We reject these arguments and affirm the sentence.

We review sentencing determinations under a deferential standard. State v. Grate, 220 N.J. 317, 337 (2015) (quoting State v. Lawless, 214 N.J. 594, 606 (2013)). We do not "substitute [our] judgment for the judgment of the

sentencing court." Lawless, 214 N.J. at 606 (first citing State v. Cassady, 198 N.J. 165, 180 (2009); and then citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). Instead, we will affirm a sentence unless

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Miller, 237 N.J. 15, 28 (2019) (alteration in original) (quoting State v. Fuentes, 217 N.J. 57, 70 (2014)).]

When sentencing a defendant for multiple offenses, "such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence." N.J.S.A. 2C:44-5(a). In State v. Yarbough, 100 N.J. 627, 643-44 (1985), our Supreme Court established criteria that a sentencing court must consider when deciding whether to impose consecutive sentences. Namely, the court must evaluate whether

> (a) the crimes and their objectives were predominantly independent of each other;
>
> (b) the crimes involved separate acts of violence or threats of violence;
>
> (c) the crimes were committed at different times or separate places, rather than being committed so closely

in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous

. . . .

[Id. at 644.]

"The Yarbough factors are qualitative, not quantitative; applying them involves more than merely counting the factors favoring each alternative outcome." State v. Cuff, 239 N.J. 321, 348 (2019) (first citing State v. Molina, 168 N.J. 436, 442-43 (2001); and then citing State v. Carey, 168 N.J. 413, 427-28 (2001)).

"When a sentencing court properly evaluates the Yarbough factors in light of the record, the court's decision will not normally be disturbed on appeal." State v. Miller, 205 N.J. 109, 129 (2011) (citing Cassady, 198 N.J. at 182). Nevertheless, when a sentencing court fails to explain its decision to impose consecutive sentences a remand is generally required for the judge to provide an explanation on the record. Ibid. (citations omitted).

In sentencing defendant, the court considered the various aggravating and mitigating factors and then found applicable aggravating factors three and nine and mitigating factor ten on all counts. N.J.S.A. 2C:44-1(a)(3), (a)(9), (b)(10).

On the conviction for theft, the court also applied mitigating factor six because defendant was ordered to pay restitution. N.J.S.A 2C:44-1(b)(6). The court considered defendant's arguments for mitigating factors seven, eleven, and thirteen, but declined to apply them.

In evaluating mitigating factor eleven, the court acknowledged that defendant had several children who he claimed were dependent. Nevertheless, the court found that there was no extraordinary hardship because there was no evidence that defendant was the sole caretaker for any of the children or that the children had special needs.

The court also laid out its reasons for finding aggravating factor nine, explaining that defendant's multiple crimes showed a clear need to deter defendant and others from violating the law. Our review of the record satisfies us that the court's determinations concerning the aggravating and mitigating factors are supported by evidence in the record.

After sentencing defendant to concurrent terms of six years in prison with three and a half years of parole ineligibility on the convictions for unlawful possession of the handguns, the court imposed a consecutive sentence of five years in prison with three and a half years of parole ineligibility on the conviction for unlawful possession of the assault firearm. Both sentences were

consistent with the sentencing guidelines. Moreover, the court had clearly explained why a consecutive sentence was warranted. In that regard, the court found that there were two "completely different incidents . . . happening on completely different dates with actually different guns and different circumstances." The court also reasoned that it "would not be appropriate to have them run concurrent[ly]" because "there's nothing similar about the[m]." Those findings are also supported by the record and are consistent with the analysis required for imposing consecutive sentences.

We further note that defendant was sentenced to an aggregate of eleven years in prison with seven years of parole ineligibility. In the plea agreement, the State had agreed to recommend an aggregate sentence of twelve years in prison with seven years of parole ineligibility. Accordingly, defendant was sentenced to less time than he agreed to serve in his plea agreement. In short, we discern no abuse of discretion or error concerning the sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1134-18T4