**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1525-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSE R. BAEZ a/k/a
JOSE R. BAEZ-DE LA CRUZ,

    Defendant-Appellant.

_____

Argued December 2, 2020 – Decided February 19, 2021

Before Judges Alvarez and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 17-10-1383.

Kevin G. Roe argued the cause for appellant.

Craig A. Becker, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; Craig A. Becker, of counsel and on the brief).

PER CURIAM

Defendant Jose R. Baez appeals the June 10, 2019 Law Division denial of his motion to suppress evidence, as well as the November 1, 2019 sentence. We affirm.

At the suppression hearing, Bergen County Prosecutor's Office Narcotics Task Force Detective Timothy Cullen testified that on February 22, 2017, a Drug Enforcement Agency (DEA) agent[1] passed on a tip from a confidential informant (CI). The CI notified the DEA agent, based on the CI's "personal knowledge," that defendant was moving laundered money in exchange for drugs. The CI said defendant was known to travel in a vehicle containing hidden compartments.

Cullen further testified he was advised the CI had been "responsible for the seizure of 100 kilograms of narcotics, over a million dollars in currency and about two dozen criminal arrests." As a result, on that date, officers monitored defendant's quick round trip from New Jersey to New York through license plate readers located at the George Washington Bridge. Cullen had previously surveilled defendant's home address and knew defendant drove a black 2008 Saturn Vue.

The officers monitored defendant's travel on Route 1 southbound, while Cullen stationed himself on a side street. When defendant's vehicle came into

---

[1] The agent was a Fort Lee officer on loan to the DEA.

A-1525-19

Cullen's view, defendant was traveling in the far-left lane. Cullen pulled out and followed defendant in the left lane for approximately a quarter mile. Defendant crossed over the right lane and turned right onto an exit ramp. Once off the highway, Cullen pulled him over, intending to cite defendant for a violation of failure to keep right, N.J.S.A. 39:4-88(a).

Because the car had tinted windows, Cullen knocked on a rear window so defendant would roll it down. The officer wanted to confirm that defendant was the only occupant. Cullen recognized defendant immediately as the person he had seen getting in and out of the Saturn Vue in front of the Palisades Park address he had surveilled a month or two earlier. As Cullen spoke to defendant through the open car window, he noticed a strong smell of air freshener, and saw a single key with an after-market alarm fob in the ignition. The judge watched the video recording of the stop, and it corroborated Cullen's account.

Cullen explained car air freshener was frequently used by persons involved in illegal drug trafficking because it was rumored to mask the scent of contraband, thus throwing off any police dogs used to search a vehicle. The after-market fob was commonplace in cars used in the transport of illegal drugs.

During the stop, defendant told Cullen that the car belonged to his sister. He first claimed that he never drove it, then said he drove it "sometimes." Cullen

said it is not unusual that when a vehicle is "trapped out," in other words, fitted with hidden compartments for the transport of contraband, that it is registered to a third party.

Defendant told Cullen that he lived in Manhattan and was on his way to an Auto Zone store in New Jersey to buy brake parts. Cullen knew this statement was false, having seen defendant at his home address. When asked if he had ever been in trouble, defendant denied it—a statement Cullen also knew was false, as defendant had a 2007 conviction for money laundering. At that juncture, Cullen asked defendant to sign a consent to search. Defendant agreed. $63,500 was found in a secret compartment, along with $1000 and two cell phones in a man's satchel on the front seat. Approximately $1600 was taken from defendant's person.

Based on the discovery of the bundled cash in defendant's vehicle, together with the other circumstances spelled out in an affidavit, Cullen obtained a search warrant for defendant's home. The execution of the warrant led to the discovery of $316,000 in bundled currency inside hidden compartments, along with four kilograms of cocaine.

Defendant moved to suppress the results of the search of the vehicle and his residence. The judge's denial of defendant's motion to suppress was

A-1525-19

anchored in his conclusion that Cullen was a credible witness and the motor vehicle stop constitutionally reasonable. He found the distance Cullen witnessed defendant driving in the left lane of an otherwise empty roadway sufficient to establish a reasonable and articulable suspicion that he was violating the motor vehicle laws. Based on the initial seizures of cash, and the vehicle's hidden compartment, he also found the search warrant application passed constitutional muster.

After the motion was denied, defendant entered a plea of guilty to count one of a multi-count indictment—first-degree possession of a controlled dangerous substance with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(1).[2] The judge imposed the recommended sentence of twelve years imprisonment with four years of parole ineligibility based on his weighing of the aggravating and mitigating factors, including consideration of defendant's personal and health status.

Now on appeal, defendant argues the following:

> I. DEFENDANT'S VEHICLE WAS STOPPED IN THE ABSENCE OF A REASONABLE OR ARTICULABLE SUSPICION TO BELIEVE A CRIME WAS COMMITTED AND WAS A PRETEXT TO SEARCH DEFENDANT'S VEHICLE.

---

[2] The dismissed charges included third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1), and second-degree money laundering, N.J.S.A. 2C:21-25.

II. THE POLICE LACKED A REASONABLE BASIS TO REQUEST CONSENT TO SEARCH DEFENDANT'S VEHICLE.

III. THE ISSUANCE OF THE SEARCH WARRANT FOR DEFENDANT'S RESIDENCE WAS BASED UPON INFORMATION LEARNED DURING THE COURSE OF THE ILLEGAL STOP AND SEARCH OF DEFENDANT'S VEHICLE REQUIRING SUPPRESSION OF SAME.

IV. THE CUSTODIAL TERM IMPOSED ON DEFENDANT WAS EXCESSIVE.


I.

We "uphold the factual findings underlying the trial court's decision, so long as those findings are 'supported by sufficient credible evidence in the record.'" State v. Evans, 235 N.J. 125, 133 (2018) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). We further defer to credibility findings because of the trial judge's exclusive opportunity to view a witness's demeanor. State v. Locurto, 157 N.J. 463, 474 (1999). "When the reviewing court is satisfied that the findings and result meet this criterion, its task is complete and it should not disturb the result, even though it has the feeling it might have reached a different conclusion were it the trial tribunal." Id. at 471. However, the appellate court "need not defer 'to a trial . . . court's interpretation of the law' because '[l]egal

issues are reviewed de novo.'" State v. Watts, 223 N.J. 503, 516 (2015) (second alteration in original) (quoting State v. Vargas, 213 N.J. 301, 327 (2013)).

It is well-established that a reasonable and articulable suspicion to conduct a motor vehicle stop is a "lower standard than probable cause[.]" State v. Alessi, 240 N.J. 501, 518 (2020). We assess the totality of the circumstances in determining whether the officer had such a reasonable and articulable suspicion, as opposed to a mere hunch, or subjective good faith. Ibid.

Cullen testified unequivocally that when defendant's vehicle came into view, defendant was traveling in the left lane, where he continued for at least a quarter of a mile before crossing the right lane to exit to the right. Cullen also testified that there were no other vehicles on the roadway. Although defendant may be correct that the stop might never have occurred but for Cullen's suspicion that defendant was involved in nefarious activity, the driving he witnessed for that quarter of a mile sufficed to make his decision to stop the car and investigate the motor vehicle infraction lawful.

The State is not required "to prove that the suspected motor-vehicle violation occurred" and that it could have obtained a conviction in order for the stop to be lawful. Locurto, 157 N.J. at 470. Thus, defendant's failure to keep to the right demonstrated reasonable and articulable suspicion for the stop. Indeed,

7

"the State need prove only that the police lawfully stopped the car, not that it could convict the driver of the motor-vehicle offense." State v. Williamson, 138 N.J. 302, 304 (1994).

Defendant suggests that traveling in the left lane was reasonable given the presence of numerous businesses including gas stations on the right-hand side of the roadway, and the presence of potential other drivers creating a driving hazard. This speculation is not supported by evidence in the record. Therefore, nothing refutes Cullen's statement, which the judge found credible, that at the time defendant was traveling in the left lane, he did so on an empty highway. Cullen's testimony established reasonable and articulable suspicion for the motor vehicle stop.

II.

Defendant also contends that the officer had no reasonable basis to request the consent to search. This argument lacks merit. At the time of the stop, as Cullen explained, he had more than enough information to make the request. He had been provided information by the DEA suggesting that defendant's quick trip to New York had a criminal purpose. The motor vehicle was registered to a third party, and Cullen saw a single key with an after-market alarm fob in the ignition, often found in cars used to transport contraband. The odor of air

8

freshener, defendant's untruth about his criminal history and how often he used the vehicle, and his unconvincing story regarding a trip to an auto parts store, add up to a substantial basis for a request for consent to search.

Defendant relies on State v. Carty, 170 N.J. 632 (2002), to support his position. But, in Carty, the officer who conducted the traffic stop had no expressed reasons for requesting the consent to search, nor did he have any objective basis for assuming that the defendant in that case was involved in criminal activity. In this case, however, Cullen had ample information.

## III.

Defendant further contends that the evidence seized from his home should be suppressed as the affidavit in support of the search warrant relied upon facts gathered during the initial stop of his vehicle and evidence seized after his consent to the vehicle's search. Since the officer's conduct was lawful, this argument has no merit and need not be addressed. R. 2:11-3(e)(2).

## IV.

Defendant underwent successful treatment for throat cancer sometime before the sentence. During the sentence hearing, the judge referred to the condition, the fact defendant appeared to be in remission, and that medical treatment is available within the prison system. He further found defendant had

a minor child for whom he was financially responsible. On the other hand, the quantity of cash and drugs found in defendant's apartment was substantial, indicating in the judge's words "a significant profit motive."

Accordingly, the judge found aggravating factors three, the risk of reoffense, six, the extent of defendant's prior criminal history (in this case, a prior money laundering), and nine, the need to deter him and others from violating the law. See N.J.S.A. 2C:44-1(a)(3), (6), and (9). The court found in mitigation the hardship defendant's child will suffer as a result of defendant's incarceration. See N.J.S.A. 2C:44-1(b)(11). The judge adequately analyzed the aggravating and mitigating factors, and properly weighed them in imposing the sentence.

Our "review of sentencing decisions is relatively narrow and is governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010). We find no such abuse of discretion occurred here. The sentence does not shock our conscience. Ibid.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1525-19